UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BRUCE WOLF, as Personal Representative of the Estate of Anna Baisheva and on behalf of its beneficiaries,<br>Plaintiff,<br>v.<br>CITY OF EVERETT, *et al.*,<br>Defendants. | Case No. C25-1556-RSM<br><br>ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT |

## I. INTRODUCTION

This matter comes before the Court on the Motions for Summary Judgment filed by Defendant City of Everett ("the City"), Dkt. #38, Defendants BNSF Railway Company ("BNSF") and National Railroad Passenger Corporation ("Amtrak") (collectively, "Railroad Defendants"), Dkt. #45, and Defendant Snohomish County ("the County"), Dkt. #61. Plaintiff Bruce Wolf brings this personal injury action based on alleged negligence by Defendants related to an accident between an Amtrak train and decedent Anna Baisheva. Dkt. #1-1. The Court has reviewed Defendants' Motions (Dkts. #38, #45, #61), Plaintiff's Responses (Dkts. #41, #65, #71), Defendants' Replies (Dkts. #53, #67, #74), and provided exhibits, and the Court finds oral argument unnecessary. For the reasons below, the Court will grant Defendants' Motions.

## II. BACKGROUND

Harborview Park in Everett, Washington is owned by the City. Dkt. #8 at ¶ 2. This park

is bordered by a gravel service road owned by BNSF, which is marked by several "no trespassing" signs and protected by a locked gate and fencing, and leads to several sets of BNSF's railroad tracks. Dkts. #47-2, #46-18 at 19:15-20:3. On the other side of the tracks is a strip of privately owned land, the shoreline, and the tidelands owned by the County, which the County does not provide direct public access to. Dkt. #16 at ¶¶ 5, 7. Accessing the tideland requires crossing privately owned land, including BNSF's tracks. *Id.* However, just northeast of Harborview Park sits Howarth Park, also owned by the City, which provides public access to the shoreline by crossing a pedestrian overpass. Dkt. #38-1 at ¶ 2. The City advertises this public access on its website and quarterly recreation catalogs. *Id*. at ¶ 2 and Ex. C at 70:18-24. Despite all of this, people commonly access the tideland by parking at Harborview Park and crossing the tracks. Dkt. #38 at 4. On the day of the incident at issue here, several train crews alerted people near the tracks of approaching trains. Dkts. #46-9 at 37:6-22.

Baisheva and her husband first accessed the tideland via BNSF's service road in March 2024, where they observed a train moving on the tracks. Dkt. #38-1 at Ex. C at 73:9-24. On the evening of July 25, 2024, the couple again parked at Harborview Park, accessed the BNSF service road through an opening in some blackberry bushes, and walked for almost half a mile before crossing two sets of BNSF tracks to fish at the shoreline. Dkt. #62 at Ex. D at 82:2-88:13. The tide was higher than in March 2024. *Id*. at 108:5-7. There, the couple fished for a couple of hours. Dkt. #1 at Ex. A. at ¶ 27, #38-1 at Ex. D at 92:1-3. While on the beach, the couple observed a train approach and stop on the tracks. Dkt. #62 at Ex. D at 108.

Later, due to the tide and Baisheva wanting to use the restroom, the couple decided to leave. Dkt. #38-1 at Ex. D. at 92:7-9. The train had not moved from the track, the couple could not see either end and did not observe anything to indicate the train was active, nor did they see

any other persons attempting to cross the tracks at that time. *Id*. at 92:17-93:25, 115:2-18. Baisheva feared falling in the water if they walked along the beach and needed to use the restroom, and because the train was not moving, the couple decided to climb over the train to cross the tracks by accessing a ladder alongside the train car. *Id*. at 93:1-8, 118:20-23. Baisheva ascended the train first. *Id*. at 118:20-23. Baisheva climbed the ladder, crossed to the other side of the car, and descended between two sets of tracks. Dkt. #38-1 at ¶ 7. Video footage indicates that before Baisheva descended, she did not look left in the direction of the Amtrak train. *Id*. at Ex. E at 58: 16-23. Mere moments later, Baisheva was hit and killed by an Amtrak train. *Id*., Dkt. #1 at Ex. A. at ¶ 30.

Plaintiff filed the Complaint in this matter in King County Superior Court, and the case was removed to this Court on August 15, 2025. Dkt. #1. Defendants subsequently filed their Motions for Summary Judgment in July, August, and September 2026. Dkts. #38, #45, #61.

## III. DISCUSSION

### A. Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Material facts are those which might affect the outcome of the suit under governing law. *Anderson*, 477 U.S. at 248. In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)).

On a motion for summary judgment, the Court views the evidence and draws inferences in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Sullivan v. U.S. Dep't of the Navy*, 365 F.3d 827, 832 (9th Cir. 2004). The Court must draw all reasonable inferences in favor of the non-moving party. *See O'Melveny & Meyers*, 969 F.2d at 747, *rev'd on other grounds*, 512 U.S. 79 (1994). However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

For landowner negligence under Washington law, plaintiffs must establish the existence of a duty owed to them by the landowner, a breach of that duty, and damages caused by that breach. *Hertog v. City of Seattle*, 138 Wn.2d 265, 275 (1999). For premises liability, a court considers possession and control of property in determining whether a duty of care exists. *Gildon v. Simon Property Group, Inc.*, 158 Wn.2d 483, 496 (2006). "The threshold determination of whether the defendant owes a duty to the plaintiff is a question of law." *Tincani v. Inland Empire Zoological Soc.*, 124 Wn.2d 121, 128 (1994).

"In Washington, the scope of the duty of care landowners owe to persons on their land is determined by the entrant's status as an invitee, licensee, or trespasser." *DeBerge v. City of Seattle*, 103 Wn. App. 1057, 2000 WL 1873950, at *1 (2000). For licensees:

> A possessor of land is subject to liability for physical harm caused to licensees by a condition on the land if, but only if,
>
> (a) the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such licensees, and should expect that they will not discover or realize the danger, and
>
> (b) he fails to exercise reasonable care to make the condition safe, or to warn the licenses of the condition and the risk involved, and
>
> (c) the licensees do not know of or have reason to know of the condition and the risk involved.

*Memel v. Reimer*, 85 Wn.2d 685, 689 (1975) (quoting Restatement (Second) of Torts, Section 342).

Along with the duty owed to licensees, landowners also owe to invitees a general duty "to maintain its premises in a reasonably safe condition" and "an affirmative duty to discover dangerous conditions." *Egede-Nissen v. Ctystal Mountain, Inc.*, 93 Wn.2d 127, 132 (1980). "This duty, however, extends only to the 'area of invitation' that portion of the premises arranged so as to lead an invitee to reasonably believe it is open to her." *Id.* (quoting Restatement (Second) of Torts, Section 332, comment L).

**B. Analysis**

Defendants County and City both argue that they owed no duty to Baisheva because they do not own the land or adjacent property where Baisheva's accident occurred. Dkts. #38 at 6, #61 at 16. "The majority of jurisdictions do not impose a duty upon landowners to protect people on their land from dangers on adjacent land." *McMann v. Benton Cnty., Angeles Park Communities, Ltd.*, 88 Wn. App. 737, 742 (1997).

However, Plaintiff argues that Defendants owed invitees a duty "where they are reasonably expected to go during the course of a visit, including a premises other than the landowners." Dkt. #41 at 16 (citing to *Degel v. Majestic Mobile Manor, Inc.*, 129 Wn.2d 43 (1996)), #71 at 12. Plaintiff further argues that the "'area of invitation' can be enlarged depending on the subjective belief of the invitee." Dkts. #41 at 17 (citing to *Tincani*, 124 Wn.2d at 141), #71 at 11.

In *Degel*, a creek existed 10 feet below a perimeter road of a mobile home park, the slope to the creek was steep and slippery, the landlord of the mobile home park developed a grassy area beyond the perimeter road near the creek as a children's play area, the landlord fenced other

areas but not between the play area and the creek, and the landlord required families with children to live closest to the creek. 129 Wn.2d at 46-47. Because the landlord invited children to that area, the Washington Supreme Court determined that a jury could find that the landlord should have anticipated and guarded against harm to children caused by the creek. *Id*. at 54.

In *Tincani*, a high school student went off the main path to a side trail while visiting a zoo and fell down a rock outcropping. 124 Wn.2d at 124-26. Though signs indicated that visitors should stay on the main trail, the Washington Supreme Court determined that the zoo possibly negligently marked the main trail and side nature trails, thus "extending the area of invitation to the include the cliff." *Id*. at 141.

In response to the County, Plaintiff also points to *DeBerge* to argue liability. Dkt. #71 at 9-11. There, a plaintiff was struck by a train when crossing a well-worn foot path across the tracks that split one part of a Seattle park from another. 2000 WL 1873950, at *1 (2000). Because the boundary between park land and the railroad was ambiguous to the point that "even park employees had difficulty determining the boundary" and the common footpaths cut from one side of the park to the other, the court found "ambiguity as to the scope of the City's invitation to park patrons[.]" *Id*. at *3.

Plaintiff also looks to *Rockefeller v. Standard Oil Co. of Cal.*, 11 Wn. App. 520 (1974). There, the plaintiffs were injured when they ran their truck into a ditch on state property when pulling into a gas station. *Id*. Because the gas station knew of the ditch only four feet from its property boundary, failed to replace lighting that illuminated that area, and had put out no signs or barriers to warn of the ditch, the court there held that a jury could conclude that the gas station knew of the hazard to its invitees and failed to take reasonable measures to eliminate or warn of the hazard. *Id*. at 522.

The Court agrees with Defendants that the above cases are distinguishable from this matter. Neither the City nor the County developed the land between the park and tideland in such a way as to invite people to use it, the area leading to the tracks was not similarly treacherous as that in *Degel*, the tracks are not on either Defendants' property and are marked by trespassing signs and a gate, and the use of the ladder to climb over a train is completely different from the above cases. Moreover, unlike Plaintiff's cited cases, the shoreline does not require crossing the tracks, as the beach is accessible via a pedestrian bridge from a different park, which the City explicitly notes on its website. *See* Dkt. #38 at Ex. A. Given all of the above, the Court finds that the City and County did not owe a duty to protect Baisheva from the hazard of the railroad tracks, and there is no genuine issue of material fact as to this duty. Accordingly, the Court will grant the City's and the County's summary judgment motions.

Among other arguments, the Railroad Defendants contend that Plaintiff's claims are barred because Baisheva voluntarily assumed the risk of her actions. Dkt. #45 at 22-23. The doctrine of implied primary assumption of risk requires a defendant show that "the plaintiff (1) had full subjective understanding (2) of the presence and nature of the specific risk, and (3) voluntarily chose to encounter the risk." *DeBerge*, 2000 WL 1873950, at *4 (quoting *Home v. North Kitsap Sch. Dist.*, 92 Wn. App. 709, 720 (1998)).

Plaintiff argues that, because "the abandoned tracks, rusted and graffiti'd railcars, served as an indication that tracks were not in use" and the BNSF train obscured Baisheva's ability to see the Amtrak train, "it cannot be assumed that [Baisheva] 'assumed' any risk[.]" Dkt. #65 at 22. Plaintiff cites to *Nay v. BNSF Railway Co.* to argue this point. *Id.* In *Nay*, an Amtrak train crashed into the plaintiff's car where she crossed tracks on a private railroad crossing. 2023 WL 5740244, at *1 (9th Cir. Sep. 6, 2023). Disagreeing with the trial court, the Ninth Circuit found

that, where the Amtrak engineer did not sound its horn until it saw the plaintiff's car and the crossing had only "passive warnings," a jury could find that the warnings were inadequate under those circumstances, even where the plaintiff did not stop. *Id*. at *2.

Here, the Court agrees with Defendants that Baisheva assumed the risks. On prior visits to the area, Baisheva saw active trains on the tracks. *See* Dkt. #46 at Ex. 3 at 74:10-17, Ex. 21 at 26:20-27:15 and 28:3-10. Baisheva also crossed those exact tracks and saw the BNSF train arrive and stop that day. *Id*. at Ex. 3 at 93:15-94:4. Plaintiff's arguments that "prolific public use for decades" and that "this area did not appear dangerous to people walking to and from the beach" are inapposite, as this does not dissuade from Baisheva's knowledge that active trains were consistently running through the area on those tracks. Dkt. #65 at 22; see also *DeBerge*, 2000 WL 1873950, at *4 ("Here, DeBerge acknowledged that she understood that trains could run on the tracks. But she also stated her belief that she was standing far enough away from the tracks to be out of danger."). Furthermore, while all parties admit to some amount of the public using the tracks at question, Plaintiff provides no facts or otherwise that Baisheva ever climbed over a train there, ever saw others climbing over trains with the use of the train ladders, or that the Railroad Defendants were aware of people crossing in this manner prior to that day. All in all, the Court finds that there is no dispute of material fact that Baisheva was aware that trains were operating on the tracks, that she could not see the track beyond the train in front of her, and she voluntarily assumed the risk by using the train's ladder to climb over and cross between active tracks.

But even if Baisheva did not assume the risk, Baisheva's act of climbing the train nullifies any alleged negligence by Defendants. The parties spend much time arguing over Baisheva's status on the tracks that day. Plaintiff asserts that Baisheva was an "implied licensee" at the time

of the accident. Dkt. #65 at 11, n. 1. However, the cases Plaintiff cites to all involve pedestrians utilizing well-used and known footpaths across railroad tracks, not climbing the train cars. *See* Dkt. #65 at 11-15. *M.P.D.A. v. Union Pac. R.R. Co.*, 699 F. Supp. 3d 883 (C.D. Cal. 2023) is especially persuasive here. In that case, it was well-known that people frequently crossed tracks, even where the train's view was obstructed, that people had been seen jumping between stopped rail cars to cross, that trains frequently blocked the main crossing for long periods of time, and that there were no signs warning people not to cross. *Id.* at 885-886. While a train was stopped, a family attempted to cross the tracks by climbing between two attached train cars, the train began moving without warning while the last person was climbing, and she fell from the train and was run over. *Id.* at 886. Noting that active railroad tracks are an obvious danger without any warning signs necessary, the court there found that, "[t]hough it may have been foreseeable that [she] would attempt to cross the railroad tracks where the path seemed clear of nearby trains (despite it being an obviously dangerous act), it was unforeseeable that she would climb between the cars of an active train she had recently observed moving." *Id.* at 891. Even though the train was stopped, the court noted that she "saw the train moving shortly before she attempted to pass through it . . . less than half an hour beforehand." *Id.*

Similarly, here, Baisheva crossed the tracks, like many others, to reach the water and later saw a train approach and stop on the tracks. *See* Dkt. #46 at Ex. 3 at ("Q. Okay. Did you hear the train as it was coming? A. I was filing it on video."). After waiting to see if the train would move, the couple decided to cross by climbing the train, which also impeded the view of the oncoming Amtrak train that ultimately struck Baisheva. Plaintiff provides no evidence that crossing in this manner was usual or something Defendants would be aware of. *See M.P.D.A.*, 699 F. Supp. 3d at 891 ("While Plaintiffs produce evidence that railroad employees frequently

encountered trespassers in the rail yard and allowed them to pass, they produce no evidence that Defendant or its employees were aware of trespassers climbing through the cars of an active train."). In sum, the Court finds that, regardless of Baisheva's status or what type of duty of care Defendants owed to Baisheva, it was unforeseeable by Defendants that Baisheva would climb the train cars to cross the train, and Baisheva "unreasonably strayed beyond the area of invitation" here, if any. *Egede-Nissen*, 93 Wn.2d at 132-33. Accordingly, the Court will grant Defendants' summary judgment motions.

## IV. CONCLUSION

Having considered the instant Motions, responsive briefings, and the remainder of the record, the Court hereby finds and ORDERS that Defendant City of Everett's, Dkt. #38, Defendant BNSF's and Amtraks', Dkt. #45, and Defendant Snohomish County's, Dkt. #61, Motions for Summary Judgment are GRANTED. Plaintiff's claims are DISMISSED. All pending motions are STRICKEN. This case is CLOSED.

DATED this 29th day of October, 2026.

Ricardo S. Martinez
United States District Judge